IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| John Mercalde,<br>　　　　　　Petitioner<br><br>　　　　v.<br><br>Borough of Swissvale and<br>Employers' Mutual Casualty<br>Company (Workers'<br>Compensation Appeal Board),<br>　　　　　　Respondents | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

No.  221 C.D. 2022

Submitted:  August 5, 2022

BEFORE:　　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　　　HONORABLE ELLEN CEISLER, Judge
　　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH　　　　　　　　　　　　FILED:  August 18, 2023

　　　　　In this workers' compensation (WC) case, Petitioner John Mercalde (Claimant) seeks review of the February 9, 2022 Opinion and Order of the Workers' Compensation Appeal Board (Board), which affirmed the January 29, 2021 Decision and Order of Workers' Compensation Judge John McTiernan (WCJ McTiernan). WCJ McTiernan granted the Petition to Review Compensation Benefit Offset (Review Petition) filed by Respondent Borough of Swissvale (Employer),[1] in which it sought to compel Claimant's payment of certain subrogation amounts identified in a Third-Party Settlement Agreement (TPSA).  At issue in this appeal is whether Employer may, pursuant to Section 319 of the Workers' Compensation Act (WC

---

[1] Employer's WC insurer, Employers' Mutual Casualty Company, also is a named Respondent.  Because they are represented by the same counsel and have submitted joint filings, we refer to both together as "Employer."

Act),[2] 77 P.S. § 671, subrogate against the balance of Claimant's third-party settlement by reducing future indemnity payments. Both WCJ McTiernan and the Board concluded that it may do so. Upon review, we affirm.

## I.   FACTS AND PROCEDURAL HISTORY

The facts material to the issues presented in this appeal are not in dispute. On October 24, 2017, Claimant was injured in a car accident while on duty as a police officer for Employer. (WCJ McTiernan Findings of Fact (FOF) 1, 6; Reproduced Record (R.R.) at 9a, 10a.)[3] Employer issued a Notice of Compensation Payable (NCP) on November 14, 2017, which described Claimant's injuries as a concussion, lumbar strain, and right elbow contusion. (FOF 1; R.R. at 9a.) Employer issued amended and second amended NCPs on November 29, 2017, and December 15, 2017, which described Claimant's injuries as headaches/head contusions, a lumbar strain, and a resolved right elbow contusion. (FOF 2; R.R. at 9a.) Claimant's injuries later were adjudicated to also include facet arthropathy. (FOF 5; R.R. at 9a.)

In related civil proceedings against the third-party tortfeasor, Claimant received a $250,000.00 settlement. (FOF 7; R.R. at 10a.) Claimant and Employer thereafter executed a TPSA, dated April 3, 2020. *Id.* The TPSA identifies Claimant's total third-party settlement of $250,000.00, Employer's total accrued subrogation lien of $68,112.68, and a net balance of Claimant's settlement of $181,887.32. (R.R. at 98a.) Box 7 of the TPSA identifies Employer's net

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[3] In prior WC proceedings unrelated to this appeal, Workers' Compensation Judge David Torrey (WCJ Torrey) circulated a Decision and Order on June 30, 2020, in which he made findings of fact and conclusions of law. (R.R. at 99a-109a.) WCJ Torrey's findings and conclusions are referenced and discussed, as necessary, in WCJ McTiernan's decision.

2

subrogation lien, after subtracting expenses, to be $50,505.99. *Id.* Box 8, titled "Reimbursement rate on future compensation liability," establishes a reimbursement rate of 25.84%, and Box 9 provides that "[Employer] is responsible for 25.84[%] . . . of any future weekly benefits and medical expenses to satisfy its obligation to reimburse its pro rata share of [Claimant's] fees and expenses until the subrogation interest is exhausted; $181,887.32 . . . . Thereafter, [Employer] is responsible for 100[%] of any compensation liability." *Id.* (underlining in original). Under the heading "**Further Matters Agreed Upon**," the parties agreed that **"[Employer] shall have no entitlement to subrogation interests beyond the amount set forth in the [TPSA] ($50,505.99) consistent with the holding in [*Whitmoyer v. Workers' Compensation Appeal Board (Mountain Country Meats)*, 186 A.3d 947 (Pa. 2018)]."** *Id.* (emphasis added).

Prior to executing the TPSA, counsel for both Employer and Claimant engaged in e-mail correspondence to negotiate its terms. (R.R. at 65a-68a.) In pertinent part, counsel discussed the fact that the Department of Labor and Industry, Bureau of Workers' Compensation's (Bureau) LIBC-380 form (Form 380) had not been updated since *Whitmoyer* was decided and that additional language would be required to make the form compliant. *Id.* at 65a. Employer's counsel concluded the correspondence by sending Claimant's counsel a revised Form 380 together with the following comment:

> As I mentioned, [the Bureau] did not amend [Form 380] following the [*Whitmoyer*] decision, so I believe the proposed [f]orm is in full compliance with that decision. [Employer] will not reduce future **medical** payments, and [Claimant] would have the ability to file a [p]enalty [p]etition and/or [p]etition to [r]eview [m]edical [t]reatment and/or [b]illing if my client did so.

3

*Id.* at 65a (emphasis added). After the parties executed the TPSA, Employer continued to pay indemnity benefits to Claimant at the reduced 25.84% rate identified in the TPSA. (R.R. at 60a-61a.) Claimant's counsel in the related civil proceedings placed $50,505.99 into an escrow account, which amount Claimant believed would satisfy Employer's entire subrogation interest under the TPSA. *Id.*

After Claimant's counsel did not remit the payment, Employer filed the Review Petition on July 24, 2020, seeking in relevant part to compel Claimant to immediately pay the total amount of Employer's net subrogation lien. (R.R. at 2a-3a.)[4] At the hearing on the Review Petition, Claimant's counsel argued that the TPSA provides that Employer's total subrogation interest in Claimant's third-party settlement is $50,505.99. *Id.* at 44a. Employer's counsel argued to the contrary that Employer was entitled to both recover its net subrogation lien and subrogate against the balance of Claimant's third-party settlement by reducing future indemnity payments. *Id.* at 44a-45a. By Decision and Order circulated on January 29, 2021, WCJ McTiernan granted Employer's Review Petition, finding that Employer did not intend by executing the TPSA to voluntarily limit its total subrogation interest to the amount of its net subrogation lien. (FOF 14, 15; R.R. at 11a, 12a.) WCJ McTiernan concluded that the TPSA clearly contemplates that Employer would subrogate against future payments of indemnity benefits and that the language added to the TPSA by the parties under "Further Matters Agreed Upon" was only intended to

---

[4] In the Review Petition, Employer alleged, in pertinent part, as follows:

> On April 3, 2020, Claimant and his attorney voluntarily executed [the TPSA]. As of June 2, 2020, Claimant has failed to remit to [Employer] a check in the amount of $50,505.99, representing [Employer's] net [subrogation lien]. [Employer] requests an [o]rder compelling Claimant, through his attorney, to [i]mmediately remit the $50,505.99 check to [Employer].

(R.R. at 3a.)

4

bring it into compliance with *Whitmoyer*. (FOF 16-17; R.R. at 12a.) WCJ McTiernan accordingly ordered that Employer is entitled both to immediate receipt of its net subrogation lien and to continue reducing future indemnity benefit payments at the rate of 25.84% until the balance of Claimant's third-party settlement is exhausted. (WCJ McTiernan Order; R.R. at 14a.)

Claimant appealed to the Board, which affirmed. (R.R. at 21a-31a.) Claimant now seeks review in this Court.

## II.    ISSUES ON APPEAL

Claimant presents three issues for our review: (1) whether Employer's total subrogation interest is limited by agreement to $50,505.99 pursuant to the TPSA; (2) whether Employer's total subrogation interest is limited to $50,505.99 because Employer cannot subrogate against Claimant's recovery for pain and suffering; and (3) whether Employer's total subrogation interest is limited to $50,505.99 by the Due Process Clause of the Fourteenth Amendment to the United States Constitution[5] (Fourteenth Amendment).

## III.    DISCUSSION[6]

Claimant first argues[7] that Employer agreed in the TPSA to limit its total subrogation interest in Claimant's third-party settlement to the amount of its

---

[5] The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

[6] Our "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Compensation Appeal Board (Sherlock)* 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

[7] Employer points out that Claimant filed his brief and Reproduced Record on May 26, 2022, two days past the filing deadline established by this Court. (Employer's Br. at 3.) Employer also points out that Claimant included in the Reproduced Record the brief he submitted to WCJ **(Footnote continued on next page…)**

5

net subrogation lien, or $50,505.99. Both WCJ McTiernan and the Board rejected this argument, and we likewise reject it here.

> Section 319 of the WC Act provides, in pertinent part, as follows:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe[e], his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe[e], his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. **Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe[e], his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instal[l]ments of compensation.**

77 P.S. § 671 (emphasis added). Thus, pursuant to Section 319, employers are entitled to recover indemnity benefits and medical expenses paid up to the time of a third-party settlement, usually in the form of a subrogation lien. Employers thereafter may subrogate against the remaining balance of the third-party settlement by reducing future indemnity benefit payments until the balance of the settlement is

---

McTiernan, which is not included in the Certified Record from the Board. *Id.* at 6 n.2. Although we acknowledge these defects in Claimant's filings, because we ultimately conclude that all of the issues raised in Claimant's appeal are without merit, we grant Employer no further relief on these grounds.

6

exhausted. *Whitmoyer*, 186 A.3d at 954-55. "[Section 319] is clear and unambiguous. It is written in mandatory terms and, by its terms, admits of no express exceptions, equitable or otherwise. . . . [I]t does more than confer a 'right' of subrogation upon the employer; rather, subrogation is automatic." *Thompson v. Workers' Compensation Appeal Board (USF&G Co.)*, 781 A.2d 1146, 1151 (Pa. 2001). "[T]he rationale for this right of subrogation is threefold: to prevent double recovery for the same injury by the claimant, to ensure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negligence." *Dale Manufacturing Co. v. Bressi*, 421 A.2d 653, 654 (Pa. 1980).

In *Whitmoyer*, the Pennsylvania Supreme Court considered whether an employer, after having satisfied its subrogation interest accrued as of the time of a third-party settlement, may also subrogate against the remaining balance of the settlement by way of reduced payments of both future indemnity benefits *and* medical expenses. 186 A.3d at 948-49. The Court in *Whitmoyer* concluded that, although an employer may subrogate against the remaining balance of a claimant's third-party settlement by reducing future payments of indemnity benefits, it may not reduce future payments of medical expenses:

> [A]fter satisfying the employer's accrued subrogation lien, which encompasses "compensation" payments made by the employer toward both disability benefits and medical expenses prior to the third-party settlement, the General Assembly intended the excess recovery to be paid to the injured employee and to be treated as an advance payment only on account of any future disability benefits.

*Id.* at 957 (citation omitted). *See also id.* at 958 ("Therefore, having satisfied its accrued subrogation lien at the time of settlement, an employer is not permitted to

7

seek reimbursement for future medical expenses from the employee's balance of recovery.").

Here, Claimant argues that the language in the TPSA included under the heading of "Further Matters Agreed Upon" evidences Employer's intent to limit its total subrogation interest to the amount of its net subrogation lien ($50,505.99) and forgo any right to subrogate against future indemnity payments. On this issue, WCJ McTiernan found as follows:

> [ ] Based upon the fact that [ ] Employer has filed [the Review Petition], it is clear that [ ] Employer did not intend to waive its subrogation interest on future payment of indemnity benefits. In point of fact, there would be no incentive for [ ] Employer to do so since [ ] Claimant received the full benefit available to him based on the coverage that was available. This is not an instance where [ ] Claimant compromised his third-party settlement based upon Employer['s] representations that [it] would be compromising [its] subrogation interest on future benefits.
>
> Likewise, there has been no evidence offered by [ ] Claimant other than his "interpretation" of the language contained in the [TPSA] under "Further Matters Agreed Upon[.]" Claimant suggests that the language indicates an intent by [ ] Employer to limit its subrogation interest to a recovery in the amount of $50,505.99. This interpretation is contrary to the [e-mail] exchange between counsel prior to the execution of [the TPSA] on April 3, 2020, and is also contrary to the holding in *Whitmoyer*[,] which simply indicate[s] that future subrogation interests cannot be recovered on future medical expenses.
>
> . . . .
>
> [ ] While [the language under the heading "Further Matters Agreed Upon"] suggest[s] that [Employer shall have] "no entitlement to subrogation interests beyond the amount set

8

forth in the [TPSA]," this language is modified with the proviso that this would be consistent with the holding in *Whitmoyer*. *Whitmoyer* deals only with the subrogation on future medical expenses. The language also modifies the incorrect information contained in [Form 380]. If [ ] Employer had intended to waive its[] subrogation interest, there would have been no need to complete [Boxes] 8 and 9 on the [TPSA] and no need to add any additional language under "Further Matters Agreed Upon[.]"

(FOF 15-17; R.R. at 12a) (finding designations removed).

We agree with WCJ McTiernan's analysis. Claimant attempts to isolate the language under the heading "Further Matters Agreed Upon" from the rest of the TPSA and counsel's prior communications. As WCJ McTiernan correctly observed, Boxes 8 and 9 of the TPSA are meaningful only if Employer in fact intended to subrogate against future indemnity payments. Claimant's proffered interpretation of the TPSA, that Employer agreed to extinguish its right to do that very thing, would render Boxes 8 and 9 meaningless. We will not interpret one provision of an agreement in a manner that annuls another. *See Lesko v. Frankford Hospital-Bucks County*, 15 A.3d 337, 342 (Pa. 2011). Further, it is clear from counsel's communications and the inclusion of a citation to the *Whitmoyer* decision in the TPSA that the language under "Further Matters Agreed Upon" was intended chiefly to conform the TPSA to *Whitmoyer* and preclude the reduction of future *medical expenses*. For these reasons, we reject Claimant's interpretation of the TPSA and conclude that the Board did not err in affirming WCJ McTiernan's determination that Employer did not agree to limit its total subrogation interest to $50,505.99.

Claimant next argues that, even assuming Employer did not agree in the TPSA to limit its total subrogation interest to $50,505.99, Employer nevertheless cannot recover against a third-party settlement that includes damages for pain and

9

suffering. Claimant argues that, because Employer is not obligated to pay workers' compensation benefits for pain and suffering, it should not be able to subrogate against a settlement recovered by Claimant from a third party that include damages paid for pain and suffering.

First, we agree with Employer and the Board that Claimant introduced no evidence before WCJ McTiernan indicating whether, or to what extent, Claimant's third-party settlement includes damages specifically designated as compensation for pain and suffering. On that basis alone, Claimant's argument is meritless. *See* Board Op. at 4; R.R. at 26a. Second, even assuming that Claimant's third-party settlement includes designated damages for pain and suffering, that designation will not, in itself, defeat an employer's subrogation rights. In *Thompson v. Workers' Compensation Appeal Board (USF & G Company)*, 801 A.2d 635 (Pa. Cmwlth. 2002), we concluded that a specific designation of the type of damages paid in a third-party settlement does not control whether an employer may subrogate against it. *Id.* at 638 (concluding that "subrogation rights will not be affected by the way in which the claimant and third-party tortfeasor, or the fact-finder in their action, characterize the nature of the third-party recovery") (quoting *Cullen v. Pennsylvania Property and Casualty Insurance Guaranty Association*, 760 A.2d 1198, 1201 (Pa. Cmwlth. 2000)). We explained in *Thompson*, which involved a settlement designated in part as compensation for "pain and suffering," the public policy rationale supporting this rule:

> [W]e find this result most consistent with public policy considerations. [An] employer is not a party to the tort suit. The structure of the tort settlement is in the sole control of the claimant and the tortfeasor unless, as frequently occurs, they reach out to [the] employer and obtain a compromise of the subrogation lien as part of an overall settlement. Presumably, if [a] claimant [was] to obtain a

10

full recovery in the tort action, he would be entitled to compensation for the full amount of his past and future lost wages . . . and medical expenses, as well as his pain and suffering, loss of life's pleasures, [and other damages]. Such a recovery would be ample both to satisfy [the] employer's subrogation lien and to compensate [the] claimant for his intangible losses. If [the] claimant and the tortfeasor choose to settle the case, it is sound policy to encourage them to bring [the] employer into the process so that a settlement would reflect a genuine compromise of the rights of all interested parties. For the claimant and [the] tortfeasor to settle their suit on the basis that the tortfeasor pays only for [the] claimant's pain and suffering is not a genuine compromise but merely a transparent effort to defeat [an employer's] subrogation interest. To . . . adopt [the] claimant's argument that simply by characterizing a tort recovery as solely for pain and suffering he can deprive his employer of its absolute statutory right to subrogation would encourage such behavior in derogation of the clear statutory scheme. We will not adopt such a rule.

*Id.* at 638-39 (citation and quotations omitted). Thus, and notwithstanding the fact that Claimant has failed to support his argument with any evidence in the record, *Thompson* controls our disposition of this issue. Claimant's arguments fail.

Claimant finally argues that Employer's continued reduction of indemnity payments as credits against his third-party settlement balance would deprive him of property without due process in violation of the Fourteenth Amendment. Employer contends first that this issue is waived because Claimant fails to adequately develop it in his brief. Employer argues alternatively that, in any event, Claimant's argument lacks merit because an employer's assertion of its subrogation interest against a claimant's third-party settlement does not violate due process.

11

We agree with Employer that this issue is waived. Our Supreme Court has explained that

> our rules of appellate procedure are explicit that the argument contained within a brief must contain "such discussion and citation of authorities as are deemed pertinent." Pa. R.A.P. 2119(a). Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate an appellant's arguments for him.

*Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) (some internal citations and quotations omitted). Because Claimant devotes no more than three sentences to this argument in his brief, we conclude that it is underdeveloped, unreviewable, and, therefore, waived.

## IV.  CONCLUSION

Because we conclude that all issues raised by Claimant are either without merit or are waived, we affirm the Board.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in this decision.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Mercalde,                :
           Petitioner        :
                                :
        v.                       :
                                :   No.   221 C.D. 2022
Borough of Swissvale and       :
Employers' Mutual Casualty    :
Company (Workers'           :
Compensation Appeal Board),  :
          Respondents    :

## ***ORDER***

AND NOW, this 18th day of August, 2023, the February 9, 2022 Order of the Workers' Compensation Appeal Board hereby is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge